**UNITED STATES of America ex rel. Joseph RANDAZZO, Petitioner,**

v.

**Hon. Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent.**

**No. 67 Civ. 4790.**

United States District Court
S. D. New York.
March 26, 1968.

---

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for respondent; Joel H. Sachs, Asst. Atty. Gen., of counsel.

Joseph Randazzo, pro se.

WYATT, District Judge.

This is an application for a writ of habeas corpus (28 U.S.C. §§ 2241, 2242) by Joseph Randazzo, who is in the custody of the penal authorities of New York at Green Haven Prison in Stormville, Dutchess County, in this District. Randazzo is acting for himself, without the help of counsel; by order of Judge McGohey filed December 6, 1967, he was authorized to prosecute this proceeding without prepayment of fees, etc. (28 U.S.C. § 1915(a)).

There was a judgment of conviction of applicant of manslaughter in the first degree (Penal Law, McKinney's Consol.

**4**

Laws, c. 40, § 1050 as it then stood) on February 17, 1949, in the old Court of General Sessions for New York County (Schurman, J.). The sentence was imprisonment for from six to twenty years (Penal Law § 1051 as it then stood). The judgment was on a jury verdict; the indictment (Index No. 2560/1948) was for murder in the second degree, punishable by imprisonment for from twenty years to life (Penal Law §§ 1046, 1048, as they then stood).

Randazzo contends that detention under this conviction (sometimes herein the "manslaughter" conviction) violates his federal constitutional rights (1) because his appeal from the conviction was "frustrated" (he means, presumably, by the state) and (2) because the state denied him a hearing under the rule of People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) carrying into effect the "separate hearing" on the voluntary character of a confession required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

I

Before the trial on the sec nd degree murder charge Randazzo, at the request of his counsel, was committed to Bellevue Hospital for psychiatric examination.

The evidence at the trial established that Randazzo about three o'clock in the morning of August 8, 1948, on the lower East side in Manhattan, hit a man at least twice on the head and face with a baseball bat, using both hands and with much force; from his injuries, the man died some hours later. Randazzo was then about 20 years old, separated from his wife and living in the neighborhood with his parents. Self-defense was the explanation of Randazzo, who testified at his trial. The jury, by its verdict, rejected this explanation. As noted above, the judgment of conviction was entered on February 17, 1949; the sentence was imprisonment for from six to twenty years.

Randazzo was represented at his trial by retained counsel, Morris Dickman, Esq.

The term of imprisonment of Randazzo began on February 21, 1949, the date he was received at Sing Sing Prison (Correction Law, McKinney's Consol.Laws, c. 43, § 231).

Mr. Dickman timely filed a notice of appeal on March 11, 1949.

By order entered July 12, 1949, the Appellate Division, First Department, granted a motion for Randazzo for permission to prosecute the appeal on the original record (not printed) but with printed briefs; the Court ordered that the record with points on appeal be filed by September 2, 1949. This was not done.

By order entered February 1, 1950, a motion by the People to dismiss the appeal for failure to prosecute was granted by the Appellate Division. No one appeared for Randazzo in opposition. Notice of the motion was given to counsel but not to Randazzo.

On December 17, 1953, Mr. Dickman died (N.Y. Law Journal, December 24, 1953).

According to records of the Parole Board, Randazzo was released on parole in January 1954 from the correctional institution at Comstock but was returned to prison in the following month as a parole violator.

In July 1956, Randazzo, acting without counsel, moved in the New York Supreme Court to obtain a copy of the pretrial report on his psychiatric examination; a copy had been given Mr. Dickman but he had died in 1953. In March 1957, this motion was denied on the ground that Randazzo was in custody as a result of the manslaughter conviction and not by reason of the psychiatric examination.

On March 26, 1957, Randazzo was released on parole from Clinton Prison (Correction Law, Art. 8, see § 213).

In January 1961, Randazzo, acting by David Markowitz, Esq., as retained counsel, moved in the New York Supreme Court for a writ of error coram nobis to vacate the manslaughter conviction. The ground was that the District Attorney

had suppressed evidence favorable to Randazzo in the psychiatric report. The Court (Postel, J.) set the matter down for hearing but in June 1961 the motion was withdrawn by Randazzo and his counsel.

In July 1962, information reached the Parole Board that Randazzo was, among other things, associating with a major narcotics violator and was believed to be in the narcotics traffic. The Board on July 10, 1962 issued a warrant for his retaking (Correction Law § 216).

On July 12, 1962, a parole officer and one or more police detectives went to the apartment building on Rivington Street on the lower East side where Randazzo lived; in his third floor apartment he was arrested by the parole officer under authority of the Parole Board warrant. At the same time the parole officer searched the premises and in the bedroom of Randazzo found 31 ounces of heroin concealed in a hollow in a dresser drawer; the parole officer did not have a search warrant.

When the narcotic drug was discovered, the parole officer turned Randazzo over to the police detectives for prosecution; Randazzo was then taken to the Manhattan House of Detention (125 White Street) to await grand jury action and the Board of Parole warrant was filed at the House of Detention.

An indictment (Index No. 3035/1962) charging Randazzo in two counts with possession of narcotic drugs with intent to sell (Penal Law § 1751(2), as it then stood) and with possession of narcotic drugs (Penal Law § 1751(3) as it then stood) was returned by a New York County grand jury on August 31, 1962.

Randazzo (or his family) retained counsel, Jesse Zaslav, Esq., who moved to suppress as evidence the heroin found in his bedroom on the ground that the search without warrant had violated constitutional rights. There was a hearing in the Supreme Court (Davidson, J.) and on November 15, 1962 the motion was denied with an opinion (People v. Randazzo, 37 Misc.2d 80, 234 N.Y.S.2d 740).

Randazzo then pleaded guilty on November 29, 1962 to attempted possession of a narcotic drug (Penal Law § 1751(5) as it then stood); judgment of conviction (sometimes herein the "narcotics" conviction) was entered on that plea on December 20, 1962; the sentence was imprisonment for from three to six years, Randazzo being then a second felony offender (Penal Law § 1941 as it then stood) because of the prior manslaughter conviction.

There was an appeal, as permitted after denial of a suppression motion and a plea of guilty (Code of Cr.Proc. § 813–c). The appeal was prosecuted by Mr. Zaslav, the retained counsel.

The Appellate Division on March 31, 1964 unanimously affirmed without opinion (20 A.D.2d 850, 248 N.Y.S.2d 203).

On April 28, 1964, the Appellate Division, First Department, denied a motion by Randazzo, acting without counsel, to vacate the order of dismissal of February 1, 1950 and to reinstate his appeal from the manslaughter conviction; his papers dated March 18, 1964 claimed that he had never received any notice of the motion to dismiss that appeal.

On May 18, 1964, Judge Fuld made a certificate granting permission to appeal from the narcotics conviction (Code of Cr.Proc. § 520(1)). Apparently Mr. Zaslaw, the retained counsel, then withdrew; in June 1964, the Court of Appeals assigned counsel to represent Randazzo.

The issue before the Court of Appeals was solely the constitutional validity of the search during which the heroin was found. On October 15, 1964, the search was upheld and the judgment affirmed, Judge Fuld dissenting with a short opinion (15 N.Y.S.2d 526, 254 N.Y.S.2d 99, 202 N.E.2d 549). Certiorari was denied by the Supreme Court on June 7, 1965 (381 U.S. 953, 85 S.Ct. 1810, 14 L.Ed.2d 725).

In July 1964, Randazzo, acting without counsel, moved in the New York Supreme Court for a writ of error coram nobis to vacate the manslaughter con-

viction. The ground was that his appeal had been dismissed in the Appellate Division on February 1, 1950, without any notice to him. By order (with memorandum opinion) entered October 7, 1964, the Court (Postel, J.) denied this motion without a hearing, noting that, while it was then required that notice of dismissal of appeal be given to defendants personally, the statute (Code of Cr.Proc. § 537–a) had become effective September 1, 1963 and was not retroactive. The Appellate Division unanimously affirmed this order on March 2, 1965 (23 A.D.2d 722, 258 N.Y.S.2d 332). Judge Fuld on April 9, 1965, refused to make a certificate granting permission to appeal to the Court of Appeals (Code of Cr.Proc. § 520(1)).

On May 24, 1965, this Court (Judge Croake) took under advisement an application (65 Civ. 1179) by Randazzo, acting without counsel, for a writ of habeas corpus. The grounds appear to have been (a) that the dismissal on February 1, 1950 of his appeal from the manslaughter conviction without notice to him personally was a violation of federal constitutional rights and (b) that (among possibly other grounds) he was without the effective assistance of counsel on his appeal because his counsel was "either incapacitated or deceased during the crucial appeal period".

By order, with opinion, filed June 15, 1965, Judge Croake denied the application without a hearing. As to ground (a) the denial was because it had no merit; as to ground (b), the denial was because state remedies had not been exhausted (28 U.S.C. § 2254).

By order filed July 19, 1965, Judge Croake issued a certificate of probable cause (28 U.S.C. § 2253), granted authority to appeal without prepayment, etc. (28 U.S.C. § 1915(a)), and assigned Legal Aid Society "to handle the appeal".

By order filed June 17, 1966, the Court of Appeals for this Circuit affirmed without opinion the order of Judge Croake.

Apparently seeking a state remedy as indicated in Judge Croake's opinion, Randazzo, acting without counsel, in September 1966 moved in the New York Supreme Court for a writ of error coram nobis. Again he urged that his appeal from the manslaughter conviction had been wrongfully dismissed without notice to him, but he added the further ground that he had been deprived of his right to appeal because of "death or incapacitation" of his counsel (Mr. Dickman) or "misrepresentation" or "act of fraud" of his counsel "after having accepted a fee and having contracted to go ahead".

In a "supplementary affidavit", apparently not sworn to but dated September 20, 1966, Randazzo states that Mr. Dickman, his counsel in the proceedings in which there was the manslaughter conviction, told his father (who had retained Mr. Dickman) that nothing more could be done about the appeal because his father had no funds "to purchase the trial record and the costs of printing the briefs" and to pay legal fees and that "thereafter" the appeal was "dismissed". This is, in part at least, false because, as has been seen, the Appellate Division had permitted appeal on the original record.

By notice dated September 15, 1966, Randazzo made a second motion in the New York Supreme Court for a writ of error coram nobis as to the manslaughter conviction. This motion advanced the claim that a police officer had testified at the trial to an "oral confession" in which Randazzo "admitted his guilt"; and that a separate hearing as to whether the "confession" was voluntary was required under People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

By an order entered November 23, 1966, the Court (Schweitzer, J.) denied without a hearing the two motions for a writ of error coram nobis as to the manslaughter conviction. There had been two opinions filed earlier. In the opinion on the first motion, judicial notice was

taken of the fact that Mr. Dickman had died in December 1953 and had been in active practice in February 1950, when the appeal from the manslaughter conviction was dismissed; thus he had not been dead or incapacitated at that time. In the opinion on the second motion, the Court stated that no "Huntley" hearing was required because no question had been raised at trial as to "the voluntariness of any statement made by the defendant".

Randazzo, continuing to act without counsel, took an appeal to the Appellate Division from the order entered on November 23, 1966. The Appellate Division unanimously affirmed on June 20, 1967, 282 N.Y.S.2d 641. A certificate granting permission to appeal to the Court of Appeals was refused by Chief Judge Fuld on October 4, 1967.

Randazzo had been in custody since his arrest on the parole violation warrant on July 12, 1962. At least since the narcotics conviction on December 20, 1962, Randazzo was serving his sentence on the manslaughter conviction only; this is because Penal Law § 2190(2) (as it stood before September 1, 1967) provided that if a person under sentence for a felony is thereafter convicted and sentenced to imprisonment, the term under the second sentence does not begin until the expiration of the term under the first sentence.

Effective September 1, 1967, the Penal Law was extensively revised and changes were also made in the Correction Law.

Provision was made for the "conditional release" of a prisoner, if he requests it, whenever his good behavior time equals the unserved portion of the maximum term being served (Penal Law § 70.40(1) (b)).

According to information supplied by an Assistant Attorney General, Randazzo on December 1, 1967 received a "conditional release" from imprisonment under the sentence imposed on the manslaughter conviction and is now serving the sentence imposed under the narcotics conviction.

## II

On this application for a writ of habeas corpus, applicant attacks his manslaughter conviction for claimed violation of his federal constitutional rights.

As just seen, however, the respondent Warden is not detaining him under that conviction. Having been "conditionally released" from custody under that conviction, he is "under the supervision of the state board of parole" (Penal Law § 70.40(1) (b)) and "in the legal custody of the board of parole" (Correction Law § 827(6)). This would be a sufficient custody status to support a jurisdiction to issue the writ and to grant relief (Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)) if the members of the Board of Parole were parties here. They are not parties, however, and this Court has presently no jurisdiction over them in respect of the status of this applicant.

The Warden, however, is detaining Randazzo under the narcotics conviction for which he was sentenced on December 20, 1962. As we have seen, Randazzo was sentenced as a second felony offender (Penal Law § 1941 as it then stood), this because of the prior manslaughter conviction.

If the prior manslaughter conviction be invalid for violation of constitutional rights, as applicant here asserts, he should have been sentenced on the narcotics conviction as a first offender. If it is possible that on such a resentencing under the narcotics conviction as a first offender, Randazzo could receive a sentence shorter than the period already served since December 20, 1962, then an order directing his release from custody under the narcotics conviction would be warranted. United States ex rel. Durocher v. LaVallee, 330 F.2d 303, 305 n. 2 (2d Cir. 1964); United States ex rel. Smith v. Martin, 242 F.2d 701 (2d Cir. 1957); United States ex rel. Foreman v. Fay, 184 F.Supp. 535 (S.D.N.Y.1960).

If Randazzo were now resentenced on the narcotics conviction, the provisions of the Penal Law as it stood at the time of

the commission of the offense in 1962 would be applicable. The revised Penal Law so provides (§ 5.05(3)). On resentence, therefore, the punishment would have to be imprisonment for an indefinite term of 1½ to 5 years (Penal Law § 1751(5) and (3) as it then stood). Thus, Randazzo could now receive a sentence shorter than the time he has served since December 20, 1962—more than five years. If his manslaughter conviction be invalid, then [according to the cases cited above) it would be appropriate by order to direct his release from custody under the narcotics conviction.

■ Is this conclusion affected by the fact that if so released from physical custody by the Warden, Randazzo would be in a "conditional release" status until jurisdiction over the Board of Parole were obtained? The only relief which can be given in a habeas corpus proceeding is release from custody; if all the contentions made in the application be sustained but if for some other reason retention of the applicant in custody is lawful, then the writ cannot be used. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). In the case at bar, release of applicant from physical custody under the narcotics conviction would leave him still in the legal custody of the Parole Board in a "conditional release" status. The Supreme Court has ruled that if discharge of the applicant from physical custody is proper, the writ may be used even though the applicant would then be in a parole status. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941).

■ On the basis of the analysis made, it is concluded that the custody status of Randazzo may properly be tested in this Court by the present application for a writ of habeas corpus.

### III

The extensive litigation in the state courts since Judge Croake's decision in June, 1965, establishes that Randazzo has now "exhausted the remedies available in the courts of the State". 28 U.S.C. § 2254(b). There may be a state procedure for resentence (Correction Law § 601–a) which theoretically would be available to him but if so there are "circumstances", namely, prior decisions in his case, which make this remedy "ineffective" (28 U.S.C. § 2254).

### IV

It has taken much longer to reach the merits than it requires to dispose of the various claims here made.

■ Randazzo claims that his appeal from the judgment of conviction of February 17, 1949 was "frustrated". He does not spell out in his application how this was done but asks for an "evidentiary hearing". I have examined all the papers submitted with the application, which include the points made in the state courts. I have also examined records of the state courts, including the stenographic minutes of the trial, and have caused other records to be examined for me. The facts do not appear to be "in dispute" and therefore no evidentiary hearing is necessary. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ That his retained counsel was dead or mortally ill at the time when the appeal could have been prosecuted is disproved by the fact, not capable of dispute, that counsel died almost four years after the manslaughter conviction and continued in active practice after that conviction. Moreover, it is difficult to see how the state could be held in any way responsible for the health of a lawyer retained by or for Randazzo; surely when he heard nothing of the progress of the appeal, it was the duty of Randazzo at least to make inquiry of the state court but instead he did nothing about the appeal for at least fourteen years. During over five years of this period, Randazzo was not in prison but perfectly free personally to investigate his appeal; he did nothing.

■ If retained counsel failed to prosecute an appeal when "he knew an appeal was meritorious" or if his con-

duct in respect of the appeal was such as to shock the conscience of the court and make the proceedings a farce and a mockery of justice, then constitutional rights of Randazzo have been violated. This is the teaching of United States ex rel. Maselli v. Reincke, 383 F.2d 129, 131–32 (2d Cir. 1967). But this teaching is to be followed, according to the opinion cited (383 F.2d at 133, fn. 4), "in extreme situations and then only when the defendant is obviously prejudiced thereby".

We look to see what errors are claimed to have occurred at the trial of Randazzo in 1949. For this, the motion in the state court in 1966 for a writ of error coram nobis has been examined.

■ It is said to have been error to permit the testimony of Detective O'Hara to "damaging admissions" made by Randazzo on December 2, 1948, when he was without counsel but under indictment and released on bail. Assuming that Massiah v. United States, 377 U.S. 201, 207, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) gives substance to this claim, the decision is not applicable to trials concluded before the date of the decision (May 18, 1964). United States ex rel. Romano v. Fay, 360 F.2d 389, 393–398 (2d Cir. 1966), cert. denied sub nom., Romano v. Follette, 385 U.S. 1020, 87 S.Ct. 725, 17 L.Ed.2d 557 (1967).

■ It is said to have been error to exclude evidence of the "character or disposition" of the deceased in connection with the defense that the homicide was "justifiable" (Penal Law § 1055 as it then stood). The stenographic minutes show that the only evidence excluded at trial which was remotely of this sort was whether the police took fingerprints of the deceased to find out "whether or not he had a criminal record" (SM 93). It was not claimed at trial that deceased in fact had a criminal record. In any event, the character of the deceased "with reference to violence" is only relevant "when known to the accused". People v. Flournoy, 14 A.D.2d 854, 221 N.Y.S.2d 142 (1st Dept. 1961); Randazzo at trial testified that he did not know the deceased at all and had never seen him before the fatal incident (SM 114, 125).

■ It is said to have been error to poll only eleven jurors. This is factually incorrect, as established by the stenographic minutes (SM 193–94); twelve jurors were polled.

The claimed trial errors thus had no merit and even if the state had "frustrated" the appeal—which was not the case—Randazzo was in no way prejudiced.

■ The remaining ground urged for this application is that the state denied Randazzo a hearing as to the voluntary character of his "confession" to Detective O'Hara. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This is the same "confession" which was earlier noticed in connection with a claim that it was inadmissible because taken in the absence of counsel. When Detective O'Hara testified at the trial, the objection was that what Randazzo said to him was "incompetent, immaterial, irrelevant to the issues in this case" and "there is a long lapse of time since the arrest" (SM 60). There was no challenge to the "confession" as "involuntary" and it is difficult to see how there could have been any such challenge. Randazzo was not in custody; he apparently freely answered the few questions of O'Hara. There was no cross-examination of O'Hara, either as to the circumstances of the "confession" or as to anything else. Indeed, there is no present claim by Randazzo that his "confession" was "involuntary". Jackson v. Denno deals only with "involuntary confessions" (378 U.S. at 385, 84 S.Ct. 1774) and there must be some challenge at trial of the voluntary character of the confession. The claims of Randazzo are in this respect without merit.

The relief requested in this application for a writ of habeas corpus is denied and the application is dismissed.

So ordered.