**UNITED STATES of America ex rel. Norcott CORBY, Petitioner,**

v.

**J. P. CONBOY, Superintendent of Great Meadow Correctional Facility, Comstock, New York, Respondent.**

**No. 71 Civ. 1760.**

United States District Court,
S. D. New York.
Aug. 18, 1971.

Norcott Corby, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for respondent.

## MEMORANDUM

TENNEY, District Judge.

Petitioner, currently serving a maximum term of 25 years at the Great Meadow Correctional Facility following his conviction after trial by jury of manslaughter in the first degree, seeks his release upon a writ of habeas corpus.

He charges that the trial court erred in excluding friends and relatives from the courtroom, that he was deprived of a fair trial because of the Court's examination of certain defense witnesses, that there was prejudicial error in the Court's charge to the jury, that the prosecutor was guilty of a prejudicial misstatement, and that it was error to have admitted in evidence property seized from petitioner's automobile, since such items were not properly de-

scribed in the search warrant and were therefore inadmissible.

■ It should first be noted that the writ of habeas corpus is not available to review errors in a state trial, in the conduct of the trial, the admission of evidence, or alleged prejudicial statements in the Court's charge, or by the prosecutor, absent a showing that they deprived defendant of a fundamentally fair trial.

As will appear hereinafter, none of the errors, assuming, *arguendo*, that they were in fact errors, is of substance and, either singly or in totality, is of such an egregious nature that petitioner was deprived of a fair trial. The Court has examined the trial record against the alleged prejudicial errors and finds no basis for any claim that petitioner was denied a fundamentally fair trial.

Briefly, the facts which the jury may be deemed to have found are as follows. On April 9, 1969, at around 1:30 P.M., petitioner's blue 1969 Oldsmobile parked outside petitioner's residence, the Lenox Terrace Apartments on 132nd Street and Fifth Avenue, New York City, was broken into by one Roger Barnes and two others, and a case of stereo tapes removed despite the sounding of the burglar alarm in the car. The theft was observed by, among others, the doorman of the Lenox Terrace Apartments, who advised petitioner of the theft and described to him the attire worn by the thieves. Petitioner thereupon went to his car, turned off the alarm, and drove away. About thirty minutes later, Walter Johnson, a special patrolman assigned to a New York City Housing Authority project located between 132nd and 135th Streets, and on duty at 132nd Street near Fifth Avenue, observed a blue 1969 Oldsmobile pull up "cross angle" in the intersection of 132nd Street and Fifth Avenue. Thereupon, a man jumped from the passenger's side of the vehicle, holding an object resembling a "tire iron" and pursued on foot another man, identified later as Otis Thomas, the deceased. As Thomas started to run

down the block, petitioner emerged from the driver's side and shot Thomas in the back, whereupon petitioner and his companion went over and struck the prostrate victim on the head. Petitioner and his accomplice then returned to the Oldsmobile and drove east on 132nd Street. Johnson noted the license number on the car as it drove by, it subsequently being determined that the car had been sold to petitioner and his wife in 1968. That afternoon, petitioner brought the car to the Acey Oldsmobile dealer to be repaired. It was seized the following day, pursuant to a search warrant, as "property constituting evidence of a crime and tending to show that a particular person committed a crime." The warrant further directed "an immediate search of the above vehicle for a .38 caliber gun and lug wrench, said items being the means of committing a crime." No gun or lug wrench was discovered in the car, although an envelope containing a small stain of human blood, not enough to type, and cases containing additional rolls of stereo tape, were recovered from the glove compartment. Petitioner's defense was primarily an alibi defense furnished by a "good friend", Thomas Sharp, Jr., a taxi driver, who testified to having spent the afternoon of the killing with petitioner in benign and rather innocuous pursuits. Petitioner also attempted to discredit the testimony of the eyewitness Johnson by the testimony of one Nelson McMillan relating to bad feeling between petitioner and Johnson. Accordingly, it is with respect to the conduct of the trial judge during the cross-examination of Sharp and McMillan that we are first concerned.

■ Prior to cross-examination and after a conference at the bench between Court and counsel, the trial judge ordered the wife, parents or other relatives and friends of petitioner to leave the courtroom during the cross-examination of the witness Sharp. Since Sharp was the main witness in support of peti-

tioner's alibi defense, it was reasonable to assume that the friends and relatives of petitioner were potential witnesses who would attempt to support the alibi testimony where possible. Whether the exclusion was on request of the prosecution or on the Court's own initiative, it was clearly proper under the circumstances and no abuse of discretion has been shown. Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); United States v. Postma, 242 F.2d 488, 494 (2d Cir.), cert. denied McConnon v. United States, 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957). It is also true that the trial judge participated actively in the questioning of both Sharp and McMillan, but only because the responses of the former were evasive and deceptive and as to the latter the questioning was designed to pinpoint the time of the alleged altercation between petitioner and the witness Johnson. Furthermore, the trial judge carefully instructed the jury to disregard "anything that . . . [they] might perceive to be . . . [the judge's] attitude insofar as . . . [his] questioning is concerned" and that "[t]he question of a witness's credibility is for the jury alone. . . ." Certainly the questioning by the trial judge was not so extensive as to deny petitioner a fair trial. United States v. Tyminski, 418 F.2d 1060, 1062 (2d Cir.1969), cert. denied 397 U.S. 1075, 90 S.Ct. 1523, 25 L.Ed.2d 810 (1970); United States v. Curcio, 279 F.2d 681, 682 (2d Cir.), cert. denied 364 U.S. 824, 81 S.Ct. 59, 5 L. Ed.2d 52 (1960).

■ Coming now to the judge's charge, petitioner objected at the time of trial to that portion relating to petitioner's failure to testify which charge followed the exact language of § 393 of the N.Y. Code of Criminal Procedure (McKinney 1958). Although petitioner's attorney requested that the charge be given, he requested that the words "neglect" and "refusal" be eliminated. There is, however, no basis for peti-

tioner's unsupported conjecture of the effect on the jury of the words objected to and it clearly does not rise to the constitutional level.

■ Likewise, the slip of the tongue by the prosecutor in the course of his summation is scarcely worthy of extended comment. In the course of an extensive review of Sharp's testimony, during which the prosecutor intimated that Sharp may have been the other person in the car who, along with petitioner, perpetrated the killing, the prosecutor summed up by stating "Mr. Corby is clearly an interested witness". It was clear that Sharp and not petitioner was the individual intended to be referred to. The Court instructed the jury to disregard the misstatement and the prosecutor apologized to the jury, indicating that he meant Sharp and not petitioner. Certainly whatever prejudice there was was not of constitutional dimensions and was cured by the action of the trial judge and the prosecutor.

■ Finally, we come to the admission into evidence of certain items seized from petitioner's car not described in the search warrant and to which reference has already been made. The warrant directed a search for a .38 caliber gun and a lug wrench as items constituting the means of committing a crime, but failed to mention the blood-stained envelope and cases of stereo tape which were recovered from the glove compartment. However, the warrant authorized seizure of the vehicle as evidence of a crime and, having been seized, the vehicle could be examined or searched without a warrant. Cooper v. California, 386 U.S. 58, 61–62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); State v. McKnight, 52 N.J. 35, 243 A.2d 240 (Sup.Ct.1968).

In light of the foregoing, petitioner's motion that he be produced in this district is denied and the petition dismissed.

So ordered.