Ernest WELCOME, Petitioner,

v.

Leon J. VINCENT, Superintendent, Green
Haven Correctional Facility,
Respondent.

No. 76 Civil 1562.

United States District Court,
S. D. New York.

Sept. 2, 1976.

Julia P. Heit, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent; Joseph W. Henneberry, Asst. Atty. Gen., of counsel.

1. 39 App.Div.2d 841, 331 N.Y.S.2d 995.

2. *See* N.Y.C.P.L. §§ 440.10(1)(g) and (h).

3. 46 App.Div.2d 860, 361 N.Y.S.2d 378 (1st Dept.).

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving a sentence of twenty-five years to life imprisonment in Green Haven Correctional Facility in Stormville, New York, seeks his release on a federal writ of habeas corpus. He claims he was denied his right to a fair trial under the Fourteenth Amendment by the refusal of the trial judge to allow him to examine a defense witness as to a confession previously made by that witness, and by the alleged perjury of another witness.

Petitioner and two co-defendants were convicted of two counts of murder on March 10, 1970, after a jury trial in the Supreme Court of the State of New York. His conviction was affirmed without opinion by the Appellate Division, First Department on May 2, 1972,[1] and leave to appeal, although initially denied by Judge Burke of the Court of Appeals, was granted by Chief Judge Breitel on March 7, 1974.

In the interim petitioner moved, on May 21, 1973, for a new trial and vacatur of the judgment of conviction,[2] based upon the post-trial recantation of a prosecution witness. The motion was denied by the Supreme Court without an evidentiary hearing on November 7, 1973. The Appellate Division affirmed the denial of petitioner's motion on December 5, 1974, with one judge dissenting and granting permission to appeal to the Court of Appeals.[3] The direct appeal from the judgment of conviction and the appeal from the denial of petitioner's motion for a new trial were consolidated in the Court of Appeals, which dismissed the direct appeal and affirmed the denial of the motion for a new trial on September 24, 1975.[4] It is not disputed that petitioner has exhausted his available state remedies.

The crime of which petitioner was convicted was the murder, on November 2,

4. 37 N.Y.2d 811, 375 N.Y.S.2d 573, 338 N.E.2d 328. The Court of Appeals dismissed petitioner's direct appeal on the ground that Chief Judge Breitel had no authority to grant leave to appeal after Judge Burke had denied it, and that therefore the case was not properly before the court.

1967, of Hyman and Seymour Katz, during a robbery at their real estate office in the Bronx by three men.[5] Petitioner and his co-defendants proceeded to trial under an indictment which charged them and a fourth unnamed person in two counts with common law murder and in two counts with felony murder. The case against petitioner was based on the testimony of three witnesses. Janet Laccorn, an employee of the Katz brothers, was present when the robbery and shooting occurred. She identified one of the robbers, whom she had observed for about thirty seconds, as petitioner. Dolores Marcell, who worked in a store on the street floor of the same building, testified that she came outside when she heard screaming from the Katz brothers' office. She identified petitioner as one of three men she encountered on the street as they were leaving the building from the entrance to the Katz brothers' office. Both witnesses identified petitioner in line-ups and, although Marcell initially pointed to one of petitioner's co-defendants instead of petitioner, in court as well.

Vincent Turner testified that about three weeks after the robbery he was approached in a pool room by petitioner, who asked Turner if he had heard what had happened in the Bronx, and referred to "[t]hem two studs that I burnt." On cross-examination it was brought out that Turner previously had been convicted four times, and that he was then in jail awaiting sentence for five robberies, each of which could lead to imprisonment for up to twenty-five years. Turner testified that although no promise had been made by the state, he did expect some consideration in his sentencing as a result of his testimony.

Petitioner's defense was an alibi, based on the testimony of his girl friend and two friends of his mother that petitioner was at his mother's house at the time the crime occurred, helping prepare for a party the next day. He also called Albert Cunningham as a defense witness. During the investigation of the murders, Cunningham had been questioned by an Assistant District Attorney in the presence of two detectives, and had stated that he participated in the robbery with two persons named Branch and Green and a fourth whom he could not identify. Cunningham told the investigators that while the others went upstairs in the building he remained on the staircase; that when he heard a shot he ran from the building and left the area in a cab; and that he later met Branch who gave him $200 which he guessed "was for that." Cunningham's oral answers, although reduced to writing, were neither signed nor sworn to by him. He was indicted for the murders and brought to trial alone. The confession was ruled admissible against him after a *Huntley* hearing.[6] However, a mistrial was declared and the charges were dropped when the prosecutor decided that the alleged confession was unreliable and that the wrong man was on trial.

Against that background, Cunningham was called as a defense witness. On direct examination by petitioner's counsel, Cunningham testified that he had been indicted and charged with the Katz murders and that before his arrest and indictment he had had conversations with the Assistant District Attorney and the detectives (T. 1194–95).[7] When petitioner's counsel sought to ask Cunningham what he had said at that time, the court sustained the prosecutor's objection. After sidebar discussion the trial judge indicated that he would permit defense counsel to interrogate Cunningham as to any part he or anybody

**5.** Since there is no dispute as to the essential facts of the case, no evidentiary hearing need be held. *United States ex rel. Rice v. Vincent,* 491 F.2d 1326, 1331 n. 3 (2d Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *United States ex rel. Randazzo v. Follette,* 282 F.Supp. 2, 8 (S.D.N.Y.1968), *remanded on other grounds,* 444 F.2d 625 (2d Cir.), *cert. denied,* 404 U.S. 916, 92 S.Ct. 232, 30 L.Ed.2d 191 (1971); *see Procunier v. Atchley,* 400 U.S. 446, 451, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

**6.** *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

**7.** References are to pages of the trial transcript as printed in the record of petitioner's direct appeal to the Appellate Division.

else played in the murders, but not as to what Cunningham told others. The judge further ruled that if it appeared Cunningham was a hostile witness, that is, implicated Welcome or his co-defendants, cross-examination of Cunningham would be permitted as to his prior inconsistent statements to the Assistant District Attorney and others, even though such prior statements were not in writing (T. 1216–18).

Upon continued direct examination, Cunningham testified that he drove to the Bronx with Branch and Green and that they were armed with a shotgun and pistols. He testified that they robbed the Katz brothers' real estate office but that he did not know if during the course of the holdup a shooting occurred (T. 1223–24). On cross-examination by the prosecutor, Cunningham retracted his prior testimony, stating that he misunderstood defense counsel and thought his questions referred to the confession—a term, incidentally, volunteered by Cunningham.[8] He then categorically denied committing the robbery, knowing anything about the crimes or even knowing the location of the Katz brothers' realty office (T. 1225–28). On redirect, defense counsel, contending among other matters that Cunningham "said there was a confession" and therefore "opened the door" (T. 1229–30), sought to question him about his oral statements to the Assistant District Attorney and the detectives, to establish that these were inconsistent with the answers given on cross-examination. The court refused to allow the inquiry on the ground that Cunningham's testimony had not inculpated Welcome or his co-defendants and that his oral statements were inadmissible hearsay.

Petitioner's first claim is that the trial court's refusal to allow him to question Cunningham about the alleged confession deprived him of a fundamentally fair trial in violation of his right to due process of law. He gives three reasons why it was error to exclude Cunningham's statement: (1) because the prosecutor "opened the door" during cross-examination of Cunningham by asking a question which elicited a response referring to the confession; (2) because once Cunningham retracted the testimony he gave on direct examination, the defendant was entitled to impeach him despite the provisions of section 8–a of the former Code of Criminal Procedure, permitting the use of prior inconsistent statements to impeach a party's own witness only when such statements were made under oath or were in writing subscribed by the witness;[9] and (3) because the confession was a declaration against Cunningham's penal interest. Assuming that petitioner is correct in those contentions, it does not follow that a writ of habeas corpus must be granted. The question presented on this application is not one of the law of evidence but one of constitutional dimensions, to be tested under the due process clause of the Fourteenth Amendment. Thus, at issue is not whether it was evidential error to foreclose petitioner from questioning Cunningham about his out-of-court statements, but whether that ruling deprived petitioner of his right to a fundamentally fair trial.[10]

---

8. The prosecutor, during extensive sidebar discussion, emphasized that he had never referred to or mentioned the word "confession," and the court observed that had the prosecutor moved to strike Cunningham's volunteered reference to it, he would have granted the motion (T. 1235).

9. "In addition to impeachment in the manner now permitted by law, any party may introduce proof that a witness has made a prior statement inconsistent with his testimony, irrespective of the fact that the party has called the witness or made the witness his own, provided that such prior inconsistent statement was made in any writing by him subscribed or was made under oath." Section 8–a has been superseded by N.Y.C.P.L. § 60.35.

10. *United States ex rel. Holliday v. Adams,* 443 F.2d 7, 8 n. 1 (2d Cir. 1971); *United States ex rel. Sadowy v. Fay,* 284 F.2d 426, 427 (2d Cir. 1960), *cert. denied,* 365 U.S. 850, 81 S.Ct. 814, 5 L.Ed.2d 814 (1961); *United States ex rel. Corby v. Conboy,* 337 F.Supp. 517, 519 (S.D.N.Y. 1971); *United States ex rel. Birch v. Fay,* 190 F.Supp. 105, 107 (S.D.N.Y.1961); *see also Chambers v. Mississippi,* 410 U.S. 284, 302–03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Dutton v. Evans,* 400 U.S. 74, 80–83, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Petitioner claims that *Chambers v. Mississippi*[11] dictates a finding that he was denied due process. In *Chambers* the defendant, accused of murdering a police officer, attempted to prove that the crime had been committed by a man named MacDonald. MacDonald had given a sworn statement to Chambers' attorneys stating that he and not Chambers had killed the policeman, but retracted the confession before Chambers' trial. At his trial, Chambers was allowed to introduce testimony from eyewitnesses linking MacDonald to the shooting, and to have MacDonald's sworn confession read to the jury. However, when MacDonald, who was called as a defense witness, repudiated his confession upon cross-examination, the court did not allow Chambers' attorney to cross-examine MacDonald as a hostile witness. The court further refused, on the grounds of hearsay, to allow Chambers to present testimony from three witnesses of other out-of-court confessions by MacDonald. The Supreme Court reversed Chambers' conviction.

*Chambers* did not establish a per se rule that failure to permit cross-examination of a witness about prior statements which, by inculpating the witness, allegedly exculpate the defendant, invariably denies due process. The Court held only that upon the particular "facts and circumstances of this case," the combined effect of all of the trial court's rulings was to deny Chambers "a trial in accord with traditional and fundamental standards of due process," because those rulings made Chambers' defense "far less persuasive" than it would have been had his opportunity to present evidence not been restricted.[12] Crucial to the Court's finding that Chambers was denied due process were the persuasive indications that the hearsay statements offered were reliable. The confessions were volunteered spontaneously to friends within twenty-four hours of the crime; they were corroborated by eyewitness testimony, physical evidence and MacDonald's own sworn confession; they were clearly and devastatingly against MacDonald's penal interest; and MacDonald was present in court for cross-examination concerning the statements. In sum, the rejected evidence "bore persuasive assurances of trustworthiness."[13]

Petitioner claims that his inability to present Cunningham's confession to the jury similarly deprived him of a fair trial. He argues that the reliability of Cunningham's confession is shown in several ways. First, as in *Chambers,* Cunningham's statement was against his penal interest. Second, the state believed in the reliability of the confession enough to bring Cunningham to trial. Third, the confession was ruled admissible against Cunningham in the *Huntley* hearing.

However, the indicia that the confession was unreliable are far more compelling. Not only was Cunningham's unsworn confession uncorroborated by any other evidence, but a mistrial was declared and the prosecution against him was dropped for substantial and compelling reasons. As explained to the trial court by the District Attorney of Bronx County (T. 1244–46), police investigation revealed that Branch and Green, the two persons whom Cunningham named as committing the robbery with him, could not have done so since one was out of state and the other in jail at the time. Cunningham was given a polygraph test which indicated he had nothing to do with the robbery. In addition, when he made the statement, according to the District Attorney, Cunningham was a narcotics addict undergoing "the pangs of withdrawal" and "would have admitted anything" (T. 1245–46).

11. 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

12. 410 U.S. at 294, 302–03, 93 S.Ct. at 1049. *See Maness v. Wainwright,* 512 F.2d 88, 90–91 (5th Cir.), *reh. en banc granted,* 519 F.2d 1085 (5th Cir. 1975), *order for rehearing en banc*

*vacated,* 528 F.2d 1381 (5th Cir. 1976); *cf. United States v. Jenkins,* 496 F.2d 57, 69–70 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975).

13. 410 U.S. at 300–02, 93 S.Ct. 1038.

The statement itself was vague and confused. Cunningham did not identify the building where the robbery took place, except to say that it was a "business type building" in the Bronx. Nor could he state on what day the robbery occurred. Shown a hat and a pair of glasses apparently found by police at the scene of the murders, Cunningham stated that they belonged to the fourth person, whose name he did not know. Finally, instead of being clearly against Cunningham's penal interest, the alleged confession contains no statement that he was present at or saw the shooting or that he actually committed a robbery. Unlike the statement in *Chambers,* therefore, Cunningham's statement does not persuasively appear to be trustworthy. Under these circumstances the court's refusal to allow examination of Cunningham as to his alleged complicity in the homicides did not impair petitioner's defense to such an extent as to deny him a fundamentally fair trial.

Petitioner's second claim rests on the recantation of Vincent Turner. Over two years after the trial Turner gave an oral statement to petitioner's attorney, which was recorded and transcribed, and signed an affidavit. In those statements Turner said that his testimony relating his conversation with petitioner about "them two studs" that petitioner "burnt" was perjured, given at the behest of one of petitioner's co-defendants who feared that petitioner would testify against him and hoped that strong evidence against petitioner would induce him not to do so.

While the fact that Turner has recanted does not establish that he actually committed perjury at the first trial, since such recantations are justly regarded with great suspicion,[14] the court will assume that Turner did commit perjury. However, that fact by itself does not require that the instant application be granted. Petitioner is entitled to a federal writ of habeas corpus voiding the state court judgment of conviction only upon a showing that the state contrived to deprive him of his right to a fair trial, protected under the due process clause. The deprivation of that right is not established by a mere showing that petitioner's conviction may have been the result in part of perjury by a prosecution witness, unknown to the prosecutor. It is the deliberate, knowing, or even negligent use of false testimony by the prosecution, or the suppression of evidence favorable to the defendant, which so offends the "rudimentary demands of justice" that it deprives an accused of his right to a fair trial and taints his conviction.[15] Accordingly, to establish his claim that Turner's alleged perjury deprived him of a fair trial, petitioner must show that prosecutorial misconduct, whether by design or negligence, was implicated.[16]

14. *United States ex rel. Rice v. Vincent,* 491 F.2d 1326, 1332 (2d Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *United States v. Troche,* 213 F.2d 401, 403 (2d Cir. 1954); *see also Rhinehart v. Rhay,* 440 F.2d 718, 721–23 (9th Cir.), *cert. denied,* 404 U.S. 825, 92 S.Ct. 53, 30 L.Ed.2d 53 (1971).

15. *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 86–87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Mooney v. Holahan,* 294 U.S. 103, 112–13, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

16. *Burks v. Egeler,* 512 F.2d 221, 223–26 (6th Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975); *Elliott v. Beto,* 474 F.2d 856, 857 (5th Cir.), *cert. denied,* 411 U.S. 985, 93 S.Ct. 2284, 36 L.Ed.2d 963 (1973); *United States ex rel. Catanzaro v. Mancusi,* 404 F.2d 296, 300 (2d Cir. 1968), *cert. denied,* 397 U.S.

942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970); *Luna v. Beto,* 395 U.S. 35, 41 (5th Cir. 1968), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568 (1969) (Brown, J., concurring); *Johnson v. Bennett,* 386 F.2d 677, 679–80 (8th Cir. 1967), *vacated on other grounds,* 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968); *see also United States ex rel. Birch v. Fay,* 190 F.Supp. 105, 107 (S.D.N.Y.1961). Under certain circumstances, which may vary from case to case, however, newly discovered evidence that a judgment of conviction is based in part upon material perjured testimony may warrant the granting of a motion for a new trial even when the prosecution was unaware of the perjury. *See United States v. Rosner,* 516 F.2d 269, 272 (2d Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 3198, 49 L.Ed.2d —— (1976); *United States v. DeSapio,* 435 F.2d 272, 286 n. 14 (2d Cir. 1970), *cert. denied,* 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166; 406 U.S. 933, 92 S.Ct. 1776, 32 L.Ed.2d 135 (1971); *United States v.*

Petitioner concedes that the prosecution had no knowledge of Turner's alleged perjury. However, he claims Turner was "induced to perjure himself and testify favorably for the Prosecution because of the expectation of leniency from the People in his own pending robbery cases," and that "since it was the bargaining practices of the People that induced Turner to perjure himself, the Prosecution, albeit lacking direct knowledge of the perjury, must still be held accountable."

This claim is without merit. To accept it would be effectively to foreclose the use of the testimony of informers, confederates or accomplices who are awaiting sentence or facing possible criminal charges. From time immemorial such testimony has been recognized as necessary to secure the enforcement of criminal laws.[17] It is one thing to say that a defendant is entitled to all information relating to the credibility of a witness and every opportunity to challenge his reliability.[18] But it is quite another matter to suggest a virtual blackout of such evidence and to prevent its use by the prosecution. As long as the defense is afforded a full and fair opportunity to expose flaws in a witness' testimony, the motives he may have to testify falsely, and the other factors which touch upon his credibility, the requirement of due process of law is met. In this case, Turner's motives for fabrication were exposed to the jury and argued at length by counsel.[19] Petitioner has failed to show that knowing use of perjured testimony which constitutes a denial of due process.

The petition for a writ of habeas corpus is dismissed upon the merits.

Marquez, 363 F.Supp. 802, 805–06 (S.D.N.Y. 1973), aff'd without opinion, 490 F.2d 1383 (2d Cir.), cert. denied, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974).

17. See Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Dennis, 183 F.2d 201, 224 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Handschu v. Special Services Division, 349 F.Supp. 766, 769 (S.D.N.Y.1972).

18. See Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

19. In addition, it should be noted that Turner's recantation statement belies the factual basis for petitioner's argument. Turner stated that he perjured himself, not in the hope of getting a lighter sentence, but at the request of petitioner's co-defendant.