UNITED STATES of America, ex rel. SCARINCIO, Mark, Petitioner,

v.

COUGHLIN, Thomas A. III, Commr. of Correctional Services, Respondent.

No. 85 Civ. 4353(PNL).

United States District Court, S.D. New York.

April 7, 1987.

---

**434**

Slotnick & Cutler, P.C., New York City (Barry Slotnick and Richard A. Medina, of counsel), for petitioner.

Robert Abrams, Atty. Gen. of N.Y., New York City (Tyrone Mark Powell, Asst. Atty. Gen.), for respondent.

## OPINION AND ORDER

LEVAL, District Judge.

Mark Scarincio, serving a five to fifteen year sentence for the sale of cocaine at Downstate Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims entitlement to a new trial based on the discovery of an exculpatory eyewitness who he contends was not available to him at trial because of prosecutorial misconduct. The petition was referred to Magistrate Francis, who recommended that it be denied on the basis of factual determinations made by the state coram nobis court, including determinations that the exculpatory witness was not believable and that the alleged misconduct was not shown.

Petitioner filed objections to the Magistrate's Report and Recommendation. I find fair support in the record for the state courts' factual determinations and therefore deny the petition.

*Background*

Petitioner Scarincio was convicted of one count of criminal sale of a controlled substance in the third degree on October 23, 1981 after a jury trial in the Warren County Court of the State of New York.

Only two witnesses testified at trial, a chemist and an undercover police officer. The officer stated that, on June 4, 1980 at petitioner's home, he purchased two grams of cocaine from Vicki Macero, petitioner's girlfriend, and that just prior to the sale, petitioner told Macero either "You go sell it to him" or "You go get it for him." (T.Tr. 50, 82.)[1] The officer further testified that after paying Macero $200, Macero handed the money to petitioner. (T.Tr. 51.)

A police informant, Jennifer DeSantis, had accompanied the undercover officer to petitioner's home, where the sale took place. According to petitioner's trial counsel, when he spoke with DeSantis prior to trial, she said she was unable to recall anything of significance concerning the events at petitioner's home. Defense counsel tried unsuccessfully to contact her to arrange a subsequent interview. Defense counsel finally obtained the assistance of the prosecutor in contacting DeSantis. The next day, DeSantis called defense counsel and gave an inculpatory account of petitioner's role in the sale. Counsel thereupon entered into a stipulation that neither party would call DeSantis as a witness and that defendant would not request an adverse charge with respect to the failure of the prosecution to produce DeSantis at tri-

---

1. "T.Tr." refers to the transcript of the criminal trial held on October 21 and 22, 1981. Petitioner's Appendix, Volume One, Exhibit 1. "H.Tr." refers to the transcript of the coram nobis hearing held on August 16 and 17, 1983. Petitioner's Appendix, Volume Two, Exhibit 3. Petitioner takes no issue with the Magistrate's clear and concise statement of the facts.

al. Petitioner was subsequently convicted on the testimony of the undercover officer.

Nearly two years later, petitioner's family contacted DeSantis and she agreed to be interviewed by petitioner's counsel. Based on her statements, petitioner moved in the Warren County Court for a writ of error coram nobis. N.Y.Crim.Proc.Law § 440.-10(1).

On August 16 and 17, 1983, the county court judge who had presided at Scarincio's trial held a hearing to evaluate the new evidence. At the hearing, DeSantis testified that Macero alone had been involved with the sale of the cocaine to the undercover officer, that Macero did not hand any money to Scarincio, and that Scarincio first spoke only after the sale, when he ordered DeSantis and the undercover officer out of his house. (H.Tr. 17–21). DeSantis further testified that the incriminating version she had given in her second conversation with petitioner's counsel had been prompted by cues from Investigator Teddy Rehm of the New York State Police Department. (H.Tr. 33–34, 48–49.)

Just prior to the hearing, the prosecution disclosed certain undisputed facts regarding the second conversation between DeSantis and Scarincio's counsel. After DeSantis was told by District Attorney to call Scarincio's attorney, Investigator Rehm arranged to have DeSantis make the call from his parents' house. Rehm then taped the phone conversation with DeSantis' written consent but without the knowledge of Scarincio's counsel. Rehm informed the District Attorney during Scarincio's trial that the conversation had been taped. Scarincio's counsel, however, was not told of the tape recording until one day before the coram nobis hearing. (H.Tr. 150.)

On the basis of this information, petitioner argued that a new trial was required because of the new exculpatory testimony of DeSantis, N.Y.Crim.Proc.Law § 440.-10(1)(g), and because of the prosecutorial misconduct involved both in the alleged coaching of DeSantis as to her conversation with petitioner's counsel and in the failure to disclose to counsel the fact of the taping. *Id.* §§ 440.10(1)(b), 440.10(1)(h).

The county court denied petitioner's motion to vacate the conviction, explaining its ruling as follows:

After carefully considering all the facts and circumstances attendant to the belated appearance of this witness at a post-conviction hearing, and upon this court's personal evaluation of the witness's demeanor during the hearing, as well as the quality and substance of her testimony, this court remains wholly unconvinced that the subject testimony is of such a character as to create a probability that had such evidence been received at trial the verdict would have been more favorable to the defendant. . . .

In addition to the matter of newly discovered evidence, the defendant contends that there is sufficient misconduct chargeable to the prosecution, such that the defendant was denied the due process of law. . . . While it is alleged and admitted that Investigator Rehm did in fact tape a certain telephone conversation between Ms. DeSantis and defense counsel, there is no convincing proof presented to support the claimed impropriety, or substantial interference with a possible defense witness. . . . While this court does acknowledge the fact that Ms. DeSantis claims that Investigator Rehm was coaching her in her responses, once again the court is constrained to find against the defendant on this issue of proof due to its evaluation of the credibility of Ms. DeSantis as a witness.

Order of February 27, 1984, at 4–5 (Warren County Ct.), Petitioner's Appendix, Exhibit 2–E.

The Appellate Division affirmed the denial of petitioner's motion on March 7, 1985, and on April 1, 1985, leave to appeal to the New York State Court of Appeals was denied. Having exhausted his state remedies as required by 28 U.S.C. § 2254(b), Scarincio filed the instant petition on June 6, 1985, asserting the same grounds previously raised in his state motions.

In his Report and Recommendation, Magistrate Francis found it unnecessary to reach the constitutional issues raised by petitioner. The Magistrate explained that,

given the fair support in the record for the coram nobis court's finding that DeSantis was not a credible witness, her failure to testify at trial must be considered nonprejudicial. Petitioner objects to this conclusion, arguing that nondisclosure of exculpatory evidence directly contradicting the sole substantive witness at trial is inherently prejudicial.

*Discussion*

Petitioner asserts that he must be granted a new trial first, because of newly discovered evidence and second, because of prosecutorial misconduct which caused the absence of exculpatory evidence from his trial.

■ The first contention is insufficient as a matter of law. "[N]ewly discovered evidence only warrants habeas relief where it bears on 'the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state petitioner is not a ground for relief on federal habeas corpus.' " *Mapp v. Clement*, 451 F.Supp. 505, 511 (S.D.N.Y.) (*quoting Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963)), *aff'd without op.* 591 F.2d 1330 (2d Cir.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979).[2] Thus, petitioner here must show that the exculpa-

tory evidence was suppressed through prosecutorial misconduct depriving him of his right to a fair trial. *Welcome v. Vincent*, 418 F.Supp. 1088, 1093 (S.D.N.Y.1976) (Weinfeld, J.), *rev'd on other grounds*, 549 F.2d 853 (2d Cir.), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977).

Whether Investigator Rehm coached Ms. DeSantis into providing an inculpatory account of petitioner's role to his counsel is a factual one. There being no challenge to the procedures employed by the state courts, their factual determination is accepted as correct unless it is not fairly supported by the record. 28 U.S.C. § 2254(d)(8).[3]

The coram nobis court found against petitioner on the issue of coaching due to its "personal evaluation of [Ms. DeSantis'] demeanor during the hearing, as well as the quality and substance of her testimony" and the circumstances surrounding that testimony. Habeas review, of course, confers "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state court," but not by the federal court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983).

■ Moreover, the finding that DeSantis was not credible is amply supported by the

---

**2.** The Second Circuit applied a more lenient standard to an instance of witness recantation in *United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1315 (2d Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). In *Sostre*, however, both parties assented to the standard. The Court then affirmed the denial of the habeas petition because the district court's finding that the recanting witness lacked credibility was not clearly erroneous. *Id.* at 1317–18.

*Sostre* relied on cases which suggested that the lenient new trial standard is indeed limited to cases involving allegations of prosecutorial misconduct. *U.S. ex rel. Rice v. Vincent*, 491 F.2d 1326, 1331–32 & n. 4 (2d Cir.) (*citing United States v. DeSapio*, 435 F.2d 272, 286 n. 14 (2d Cir.1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971)), *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928). *See also Drake v. Francis*, 727 F.2d 990, 994–95 (11th Cir.1984) (confirming that *Townsend* allows habeas relief where a witness recants his trial testimony only upon a further showing of prosecutorial misconduct), *modified in part on other grounds on rehearing en banc*

*sub nom. Drake v. Kemp*, 762 F.2d 1449 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). *Rice* also indicates that the requirements of due process applicable to the states may be less stringent than the *Larrison* standard, which was advanced under the supervisory powers of the federal courts. 491 F.2d at 1332.

The New York standard for granting a new trial requires a showing that the newly discovered evidence, if it had been introduced at trial, would probable have resulted in a verdict favorable to the defendants. N.Y.Crim. Proc.Law § 440.10(1)(g). Even if it were the province of a habeas court to review the application of this state law, the coram nobis court's determination that Ms. DeSantis' testimony was not credible and would not be likely to change the verdict is fully supported by the record.

**3.** The presumption adheres to the factual findings of state appellate courts as well as to those of state trial courts. *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

record. She gave at least three contradictory accounts of the events at petitioner's home. Her testimony at the coram nobis proceeding, nearly two years after the trial, was not credible.

Petitioner argues that DeSantis had a motive to lie while a government informant but not at the coram nobis proceeding. The state appellate court observed, however, that

> DeSantis was flown from Indiana back to New York in the company of one of defendant's relatives and with funds provided by them. Though she previously complained of threats made against her and her boyfriend by defendant, DeSantis gave as a reason for her willingness to testify now that by truly describing her involvement in the sale she would thereby presumably avoid further harassment.

Order of March 5, 1985, at 1–2 (3d Dep't), Petitioner's Appendix, Exhibit 2–F. These circumstances support the discrediting of DeSantis' testimony at the coram nobis proceeding. Indeed, "such recantations are justly regarded with great suspicion." *Welcome v. Vincent,* 418 F.Supp. 1088, 1093 (S.D.N.Y.1976) (Weinfeld, J.) (*citing United States ex rel. Rice v. Vincent,* 491 F.2d 1326, 1332 (2d Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974)), *rev'd on other grounds,* 549 F.2d 853 (2d Cir.), *cert. denied,* 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977).

I find that the state court's factual determination that Rehm did not coach DeSantis is fully supported by the record.

■ Petitioner also contends that the taping of DeSantis' conversation without his attorney's knowledge was improper even though DeSantis consented to the tap-

ing. There is no merit to this contention, nor was petitioner harmed by the taping of the conversation.

There is no showing that the state in any way deprived petitioner of a fair trial.[4]

Petitioner's application is denied.

SO ORDERED.

---

**4.** Because I find that no constitutional error occurred, I need not make an independent examination of the record to determine whether Ms. DeSantis' testimony would "in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). *See also United States ex rel. Washington v. Vincent,* 525 F.2d 262, 267 (2d Cir.1975) (granting habeas petition despite state appellate court's finding that use of perjured testimony bearing on prosecution witness' testimony was

harmless), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976); *Taylor v. Lombard,* 606 F.2d 371, 375 (2d Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980); *Napue v. Illinois,* 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). I note, however, that if DeSantis had testified at petitioner's trial, in all likelihood her testimony would have been the original inculpatory version rather than the subsequently concocted exculpation which was found to be false at the coram nobis proceeding.